(No. 16189.—Judgment affirmed.)
MARY PETERS, Guardian, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(THE SPRINGFIELD DISTRICT COAL MINING COMPANY, Plaintiff in Error.)

*Opinion filed December 16, 1924.*

1. PARENT AND CHILD—*in absence of emancipation, father must support minor child.* In the absence of emancipation the father is under legal obligation to support his minor children, but when a minor is fully emancipated the relation of parent and child is the same as the relation which exists after the child becomes of age.

2. WORKMEN'S COMPENSATION—*when enlistment of minor is not complete emancipation.* The enlistment of a minor son and service of two years and two months in the army is not a complete emancipation where the son returns and lives at home while still a minor, and the guardian of the minor son will be entitled to an award of compensation for the death of the father in an industrial accident where the proof shows the father continued to support the son after his return from the army and until the father's death.

WRIT OF ERROR to the Circuit Court of Christian county; the Hon. F. R. DOVE, Judge, presiding.

T. W. QUINLAN, for plaintiff in error.

W. B. McBRIDE, and C. J. VOGELSANG, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

Joseph Bertucci came to his death about February 22, 1922, while in the employ of plaintiff in error. The deceased was survived by four children and their mother, the

latter of whom was separated from deceased and living in Indianapolis, Indiana. All the surviving children were of age or married except Louis Bertucci, who was then nineteen years old. Application for adjustment of claim for him was filed with the Industrial Commission by Mary Peters, a sister, as his guardian. The arbitrator found the petitioner was not entitled to compensation, and on review the Industrial Commission affirmed that decision. On *certiorari* the decision of the Industrial Commission was set aside by the circuit court, which court found deceased left surviving him Louis Bertucci, a minor son, whom he was under legal obligation to support, and awarded compensation in the amount of $3750, payable in weekly installments. This court granted this writ of error to review the judgment of the circuit court.

No controversy exists as to the death of deceased arising out of and in the course of his employment with plaintiff in error, nor as to the amount of compensation payable if claimant is entitled to any compensation. The only question presented for our consideration is whether, under paragraph (*a*) of section 7 of the Workmen's Compensation act, deceased "was under legal obligation to support" his minor son, Louis Bertucci.

The facts developed upon the hearing were, that Louis Bertucci quit school when he was about sixteen years old, while living at his father's house, and worked at different intervals in one or more of the coal mines near Taylorville, Illinois. His father furnished him board, clothes and necessaries of life and Louis turned over all the wages he earned to his father. Louis was trip-rider at mine 58 for a while in 1919 at $5 per day. On May 5, 1919, Louis, with his father's consent, enlisted for three years in the army and attended the aviation school at Rantoul to get an education. While there he drew $30 a month, which he collected and used without objection from his father, and he also obtained free board, room and clothing. His father sent him $5 or

314—36

$10 every two weeks or so. A reduction was authorized in the army, and upon application made by Louis he was discharged therefrom on July 27, 1921, after about two years and two months' service. He went back to where his father was, and they both lived in the old home place with one of his sisters and her husband. Louis tried to get a job as trip-rider at one of the mines upon his return home from the army and said he was able to do that kind of work. Later, about September, he broke a small bone in his foot while at a skating rink and was laid up for about six weeks. During the time he was at home after being in the army he did no work and earned no money. His father supported him, bought his clothing and paid his board during the entire period. The son was at home seven months before his father died. This proof was presented chiefly by Louis Bertucci and two of his sisters. However, no part of their testimony was contradicted.

It is the contention of plaintiff in error that the Industrial Commission had a right to properly infer that Louis Bertucci was able, at the time of his father's death, to support himself or had been emancipated, and such being the case, he was not dependent upon his father for support and the father was under no legal obligation to support him. In the absence of emancipation the father is under legal obligation to support his minor children. (*Panther Creek Mines* v. *Industrial Com.* 296 Ill. 565.) In that case, and in *Iroquois Iron Co.* v. *Industrial Com.* 294 Ill. 106, the court also considered the question of emancipation. In the last mentioned case the court said, in substance, that when a child who is physically and mentally able to take care of himself voluntarily abandons the parental roof and leaves its protection and influence and goes out to fight the battle of life on his own account the parent is no longer under legal obligation to support him; also when a minor enlists in the military service of this country he ceases to be a part of his father's family and puts himself under the control of

the government and is consequently emancipated so long as this service continues. When a minor is fully emancipated, the relation of parent and child is on a parity with the relation existing when such child becomes of age. In this case the facts were not disputed, and the proof showed the minor son entered the military service for a three-year period when he was sixteen years and six months of age. Had he remained in the army for the full period of enlistment he could not have returned to his father's house till May, 1922, about two and one-half months after his father's death. He actually remained in the service almost two years and three months, making the boy eighteen years and nine months of age when discharged from the army. At this age he returned to the old home place, where his father was living with the minor son's sister and her husband. The son lived there with his father for seven months prior to his father's death, and during that period of time the proof shows the father paid the minor son's board, bought his clothing and supported him. During the existence of the military service of the minor son parental authority was unquestionably suspended but not entirely annihilated. (*Iroquois Iron Co.* v. *Industrial Com. supra,* and notes to that case in 12 A. L. R. 928.) In other words, the emancipation of the minor son was effective during the time he was actually in the service, but when he returned home during his minority, after being discharged from the army, he again became subject to parental control and was not emancipated. The only proof in the record shows the father was, in fact, supporting him when his death occurred, and under the state of the record we think the conclusion of the circuit court was correct.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*