[Civ. No. 16793.  First Dist., Div. One.  Nov. 21, 1955.]

ARGONAUT INSURANCE EXCHANGE, Petitioner, v. GORDON FRANK KATES (a Minor) and INDUS-TRIAL ACCIDENT COMMISSION, Respondents.

Leonard, Hanna & Brophy and Edmund D. Leonard for Petitioner.

Everett A. Corten and Daniel C. Murphy for Respondents.

BRAY, J.—Raising the interesting question as to whether enlistment in the United States Army by a minor under 18 constitutes an emancipation making the presumption of dependency provided in section 3501, Labor Code, inapplicable, petitioner seeks review and annulment of an order of the commission awarding a death benefit to respondent Gordon, the minor son of John Kates who was killed in an industrial accident.

## FACTS

John and his wife, Pauline, were divorced in 1939 by a decree of the Superior Court of the State of Washington, under which she received no alimony, but which ordered John to pay her $40 per month for the support of their three children, of whom she was given custody. April 22, 1954, John was killed in an industrial accident in California. At that time said decree was in full force. The other two children had passed the ages of 18. Gordon was 17 years and 4 months old. A week after his 17th birthday and almost four months prior to his father's death, Gordon, with his mother's consent, enlisted in the Army, and at the time of his father's death was receiving $74 a month as a private. For an extended period prior to his death John had not in fact paid the support money ordered by the court nor supported Gordon in any manner. The commission applied the presumption of dependency provided by section 3501, Labor Code, and granted to Gordon a death benefit of $7,000.

## EMANCIPATION

Section 3501, Labor Code: "The following shall be conclusively presumed to be wholly dependent for support upon a deceased employee: . . . (b) *A child under the age of eighteen years* or over that age but physically or mental incapacitated from earning, upon the parent with whom he is living at the time of the injury of the parent or *for whose maintenance the parent was legally liable at the time of injury,* there being no surviving dependent parent." (Emphasis added.)

It is contended that the father was no longer legally liable for Gordon's maintenance because the latter's enlistment emancipated him from his parents and hence the conclusive presumption of that section does not apply. Whether this is so is a matter of first impression in this state. Although the Civil Code provides that a child may be emancipated by an abuse of parental authority (§ 203), by marriage or attaining majority (§ 204), or by the parent voluntarily relinquishing it (§ 211), there is no provision for emancipation by enlistment in the service.

█ It has long been established that as between the government and the parent the minor becomes emancipated from the control of the latter on enlistment or drafting into the armed forces. (See *Baker* v. *Baker* (1868), 41 Vt. 55; *In re Morrissey* (1890), 137 U.S. 157 [11 S.Ct. 57, 34 L.Ed. 644]; *United States* v. *Williams,* 302 U.S. 46 [58 S.Ct. 81, 82 L.Ed.

39] (rehearing denied 302 U.S. 779 [58 S.Ct. 361, 82 L.Ed. 602] ).)

The effect of a minor's enlistment upon the father's obligation to comply with a court order for the minor's support has been determined elsewhere in *Corbridge* v. *Corbridge* (1952), 230 Ind. 201 [102 N.E.2d 764]. There, with the consent of both parents, the minor son enlisted in the Army at a time when a divorce decree requiring the father to pay $45 per month for the minor's support was still in effect. On appeal from a judgment finding the father in contempt for failing to comply with the decree, the court flatly held that the minor's enlistment emancipated the child and made the father no longer liable for his support. The court referred to a statement in the Morrissey case, *supra* (p. 767) : " 'An enlistment is not a contract only, but effects a change of status' " and the following in *Iroquois Iron Co.* v. *Industrial Com.* (1920), 294 Ill. 106, 109 [128 N.E. 289, 290, 12 A.L.R. 924] : " 'When a minor enlists in the military service of this country, he ceases to be a part of his father's family, and puts himself under the control of the government, and is consequently emancipated so long as this service continues . . .' " It then held (p. 768) : "By the son's enlistment, his custody was placed in the United States Army. We cannot presume that the federal government did not and would not make full and adequate provision for his support, maintenance, medical care, and education if required. This would be true whether the son enlisted or was drafted.

"As soon as the son entered the armed forces the purposes of the trust for support, maintenance and education abated, and so continued as long as that service continued. . . .

"There is no more reason for equity granting the coercive remedy of imprisonment to compel payment of past due installments of support after a son is a member of the armed forces of the United States than if he had attained his majority, or if prior thereto he had been absolutely emancipated."

The Iroquois case, *supra,* dealt with a situation almost identical with ours. Under a divorce decree in full force at the time of the father's death resulting from an industrial injury, the father was ordered to pay certain sums weekly for the support of his minor son. With the father's consent, but without the mother's, and approximately three years before the father's death, the minor enlisted in the United States Marines, and was still in that service and a minor at the father's death. The commission awarded the son com-

pensation for the death of the father. The problem before the court was stated (p. 290): "It seems too clear to require argument that Reginald Olesen was not dependent upon his father for support, but the question of dependency is not controlling here. The question we are called upon to determine is whether the deceased was under legal obligation to support this son at the time of the injury." (This is identically our problem.) As set forth in the Corbridge case, *supra,* the reviewing court held that the minor's enlistment constituted an emancipation and that thereafter the father was "not under legal obligation to support his son." (P. 290.) The award was reversed. In *Peters* v. *Industrial Com.* (1924), 314 Ill. 560 [145 N.E. 629], the Illinois Supreme Court approved the rule of the Iroquois case but modified it to the extent that if at any time during minority the child is discharged from military service and returns home, he again becomes subject to parental control and the emancipation terminates. To the same effect is *Green* v. *Green* (Mo.App., 1950), 234 S.W.2d 350, where the court reversed an order of the trial court denying the father's motion to modify a divorce decree ordering support of the minor son, after that son had enlisted in the Navy. See *Dean* v. *Oregon R. & Navigation Co.*, 44 Wash. 564 [87 P. 824], to the effect that if enlistment in the Army constitutes an emancipation, it terminates upon the minor's discharge. To the same effect, 67 Corpus Juris Secundum 814.

In *Swenson* v. *Swenson* (Mo.App., 1950), 227 S.W.2d 103, the father failed to pay the amounts ordered in a divorce decree for the support of his minor son on the ground of the son's induction into the Army. In reversing the trial court's order refusing to quash execution for the unpaid amount the reviewing court quoted from the Iroquois case, *supra,* and held that such induction emancipated the child and relieved the father from complying with the divorce decree.

There is authority to the contrary of the rule stated in the Iroquois case. In *Torras* v. *McDonald* (1943), 196 Ga. 347 [26 S.E.2d 598], a father whose minor son was inducted into the United States Coast Guard, contended that such fact emancipated the child, and thereby rendered the father not liable in contempt for failing to comply with a previous divorce decree ordering him to pay monthly for the son's support. It appears that in Georgia, unless the power to alter or amend a decree of that type is reserved in the decree it

may not be thereafter modified. The court pointed out that in making the order for support the court takes that fact into consideration. As to the contention that the minor's induction into service terminates the father's duty to pay the support provided in the decree the court said (p. 600): "The induction of a minor son into the armed forces is nothing more than a rise or fall of the needs of a minor for maintenance and support, and is indefinite and uncertain as to the duration of such status."

In *Harwood* v. *Harwood,* 182 Misc. 130 [49 N.Y.S.2d 727], affirmed (268 App.Div. 974 [52 N.Y.S.2d 573]), the question in a suit brought by a minor's mother against his father, her former husband, was (p. 727 [49 N.Y.S.2d]): "The questions presented on this appeal are, first, whether the induction of a minor into the Military Service of the United States operates as a temporary emancipation during his term of service so as to suspend the obligation of his father to make payments, under a separation agreement, for the son's support, maintenance and education . . ." The court referred to the rule of the Iroquois case, *supra,* distinguishing the two cases upon the ground that this was an action upon a contract, while the Iroquois case was an issue of dependency under the Workmen's Compensation Law. The court said, however, "But to the extent that the Iroquois case is contrary to the views here expressed, we do not follow it. The induction of the boy into the Armed Services results only in a suspension of any right appellant may have to his boy's services during such period as the Nation exercises its superior right to such services. The pay received by the boy may be regarded in the nature of a gratuity from the Government, because the Government in time of war unquestionably has the right to determine what sum, if any, it will pay to those whom it calls into service. Even while the boy is in actual service, there may be many obligations which the parent is still called upon to assume.

"The obligation under the contract is not one of reimbursement to the wife for any expenses incurred by her in maintaining and supporting the son, and nothing else. The obligation does not spring into existence only upon a showing by the plaintiff that she has expended certain sums in maintaining and supporting the boy. That does not mean, nor does she claim, that she would be entitled to retain for her own use and benefit the full sum specified in the contract to the exclusion of her son, the other beneficiary; but the fact that she would have no right to the sole use and benefit

of the full installment does not impair her right to collect the entire amount. With respect to any benefits intended for the boy, her position would be that of a trustee charged with the duty, both legal and moral, to affect collection so as to make available to the boy the benefits intended for him. *Seaver* v. *Ransom*, 224 N.Y. 233 [120 N.E. 639, 2 A.L.R. 1187]. The plaintiff is not seeking a 'windfall' for herself, as the appellant charges. Rather she is seeking to prevent the appellant from taking advantage of a situation arising because of the gravest of all national emergencies.'' (Pp. 730-731 [49 N.Y.S.2d].)

*Eisenberg* v. *Eisenberg* (1945), 59 N.Y.S.2d 534, approved and followed the Harwood case in granting an order requiring the father to comply with the requirement of a separation agreement to pay support for a minor son who had entered the Merchant Marine. In *Wack* v. *Wack*, 74 N.Y.S.2d 435, there was a similar situation, the minor son being in the Navy. Giving the Harwood case as a reference the court said (p. 436): ''. . . defendant is entitled to no credit; induction into military service does not constitute an emancipation nor suspend nor abrogate the father's contractual obligation to contribute to his son's maintenance.''

In *Carson* v. *Carson* (1950), 120 Ind.App. 1 [89 N.E.2d 555], the separation agreement which provided for the support of the minor son was incorporated in a divorce decree. In an action on the contract, the father contended he was excused from complying with its terms because of the alleged emancipation of the son by reason of his being in the Army. The court said (p. 558 [89 N.E.2d]): ''It is our opinion that no emancipation of the son has occurred by reason of his entering the Armed Forces to release the father from the performance of his contractual obligations. Although, on occasion 'emancipation' has been used to signify complete severance of the legal rights and liabilities attendant upon the relationship of parent and child, it has frequently and more accurately been held to operate merely as a relinquishment to the child of its earnings, free of any of the rights or claims thereto in favor of the parent. 'Emancipation' does not operate to release a parent from liabilities and obligations involving his child which he has expressly covenanted to perform. The doctrine of emancipation has as its basis sound principles of public policy and has been applied by the courts, for the most part, to protect the best interests of children and those who have provided them with necessaries when their parents have failed

to do so. The entering of the child into the Armed Services does not constitute a voluntary surrender of control on the part of the parent. *Harwood* v. *Harwood* (1944), 182 Misc. 130 [49 N.Y.S.2d 727]. . . . The pay received by the boy may be regarded in the nature of a gratuity from the Government, because the Government in time of war unquestionably has the right to determine what sum, if any, it will pay to whom it calls into service. Even while the boy is in actual service, there may be many obligations which the parent is still called upon to assume.''

Volume 2, Armstrong, California Family Law, page 1259, states: ''Although no decision squarely meets this question, statements made by the supreme court in Workmen's Compensation cases in regard to the general scope of the parental duty to support the child suggests that California accepts the general rule that emancipation, except by marriage of the minor, *affects only the rights of the parent and not his duties.''* (Emphasis added.) This statement is based partially[1] on language in *Federal Mut. Liab. Ins. Co.* v. *Industrial Acc. Com.* (1925), 195 Cal. 283 [233 P. 335], where the court upheld an award to a minor child for the industrial death of her father who for eight years had failed to provide for her and only shortly before his death had commenced to contribute anything to her support. In concluding that the conclusive presumption of the Workmen's Compensation Act (now Lab. Code, § 3501) applied, the court said (pp. 289-290) : ''Whether such conclusion is based upon the proofs of the voluntary resumption on the part of the father of his parental relations and obligations to his child, or upon the legal liability for the support of his child imposed by the terms of the divorce decree, or upon the broader ground of the basic legal obligation imposed by law upon a father to support his dependent child to the end that it shall not become a public charge, the award of the Commission upon either and all of these grounds can be sustained.''

Thus Armstrong's statement can hardly be applied to the question of emancipation by enlistment in the armed forces.

As above shown, the majority of jurisdictions where the question has been considered hold that such enlistment constitutes an emancipation during its continuance which releases the parent of the obligation to support[2] except where he has

[1]It is also partially based upon a reference to Madden, Persons and Domestic Relations, 408, which, however, discusses emancipation in general without any consideration of the effect of enlistment.

[2]Indiana, Illinois, Missouri.

contracted to support the child during minority, in which case he would be held on the contract.[3]

The only case we have been able to find flatly holding in the absence of an agreement to support the minor, that the latter's enlistment does not constitute an emancipation and does not relieve the father of complying with the support order is the Georgia case of *Torras* v. *McDonald, supra,* 26 S.E.2d 598.[4]

Petitioner cites the quotation (hereafter set forth) in *Aetna Life Ins. Co.* v. *Industrial Acc. Com.,* 175 Cal. 91, 94 [165 P. 15, L.R.A. 1918F 194], taken from *Lackman* v. *Wood,* 25 Cal. 147, as being in support of its claim that the minor here was emancipated. The Aetna case dealt with a 19-year-old son whom it was held was not emancipated by the fact that for work on his father's ranch where the family lived the father gave the son from time to time small sums of money as payment of wages. Obviously the case itself is not in point. The Lackman case dealt with the question of whether at the time he took up certain land, the son of defendants, upon whose acts the defendants relied for their title, had been emancipated by the father. The language referred to above is (p. 151): ''The power of a father to emancipate his minor child cannot be questioned; nor can there be any doubt as to the effect of such emancipation upon the relations of the persons who are parties to it. The child is freed by emancipation from parental control; he can claim his earnings thereafter as against his father, and is in all respects his own man.''

While it is true the father may emancipate his child (Civ. Code, § 211) he had not done so in our case, unless Gordon's joining the Army constituted an emancipation.

Respondent commission in determining that enlistment of the minor did not constitute emancipation, relied upon, in addition to *Torras* v. *McDonald, supra,* 26 S.E.2d 598, *Pacific*

---

[3]New York, Indiana.

[4]While New York has not passed upon the question except where a separation agreement was involved, the language hereinbefore quoted from *Harwood* v. *Harwood,* 182 Misc. 130 [49 N.Y.S.2d 727], to the effect that the father's contract liability still exists after the minor's enlistment and that the moneys owed by the father are to be held in trust by the mother for the boy, coupled with the statement (p. 730), ''The induction of the boy into the Armed Services results *only* in a suspension of any right appellant [the father] may have to his boy's services'' during the period of the boy's remaining in the service, might indicate that in a case similar to ours the court might follow the Georgia rule. (Emphasis added.)

*Emp. Ins. Co.* v. *Industrial Acc. Com.* (1947), 81 Cal.App.2d 37 [183 P.2d 344], where the court held that the presumption we are dealing with here applied even though the minor was self-supporting and the father had not contributed to his support for over 10 years, saying, ''Irrespective of the presumptions mentioned in Labor Code, section 3501, the first duty of a father is to support his legitimate children'' (p. 41) : also *Federal Mut. Liab. Ins. Co.* v. *Industrial Acc. Com.,* 195 Cal. 283 [233 P. 335] (discussed above), and *Kamper* v. *Waldon* (1941), 17 Cal.2d 718 [112 P.2d 1], which holds that the marriage of a minor and the emancipation thereby provided by section 204, subdivision 2, Civil Code, does not release the father from his obligation to comply with the terms of a property settlement agreement entered into theretofore in which he agreed to pay monthly for the support of said minor. This holding was based upon the statement that ''It may be assumed, in the absence of an agreement to the contrary, that a parent is released from the legal duty of support upon the complete emancipation of a minor child, as by its lawful marriage'' (p. 720), and the further statement (p. 720) : ''Upon sufficient consideration the parent may agree and be bound to do more than the statute requires, so long as the additional obligation is not contrary to nor inconsistent with the statutory provision.''

It should be pointed out that in the Waldon case the court did not determine whether complete emancipation results from the minor's marriage; it merely assumed for the purpose of the case that it did and then held that in spite of such assumption the father's agreement to support continued in force.

▮ This court is faced with the question of whether it will follow the majority or the minority rule as to the effect of induction into the armed services. Because the majority rule is that the emancipation may be only a temporary one, ending if the minor is released from service during his minority, and also does not release the father of his contract obligation; because as stated in *Torras* v. *McDonald, supra,* 26 S.E.2d at p. 600, ''The induction of a minor son into the armed forces is nothing more than a rise or fall of the needs of a minor for maintenance and support, and is indefinite and uncertain as to the duration of such status''; because in all the cases discussing the matter it is held that the payment by the father of support for the minor during the period of enlistment must be held by the mother as trustee for the minor ''to make available to the boy the benefits intended

for him'' (*Harwood* v. *Harwood, supra,* 49 N.Y.S.2d 727, 731), and because under *Pacific Emp. Ins. Co.* v. *Industrial Acc. Com., supra,* 81 Cal.App.2d 37, had the minor here been completely self-supporting in industry, rather than in his country's service, he would not have been emancipated and would have been entitled to compensation by reason of his father's death, we believe that the minority rule is the better one and should be applied in this state. We are of the opinion, therefore, that the conclusive presumption of dependency set forth in section 3501, Labor Code, applies; that the induction of the minor son into the Army did not constitute such an emancipation as to relieve the father of his obligation to comply with the court order for support, and hence the ''parent was legally liable at the time of injury . . .'' (Lab. Code, § 3501, subd. (b).)

The award is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied January 18, 1956.